**Dewey P. COLLETTE, Jr.,
Claimant–Appellant,**

v.

**Jesse BROWN, Secretary of Veterans
Affairs, Respondent–Appellee.**

No. 95–7043.

United States Court of Appeals,
Federal Circuit.

April 23, 1996.

Neal L. Thomas, Rowley & Watts, Washington, DC, for claimant-appellant.

Deborah A. Bynum, Attorney, Commercial Litigation Branch, Department of Justice, Washington, DC, for respondent-appellee. With her on the brief were Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director and James M. Kinsella, Assistant Director.

Before ARCHER, Chief Judge, PLAGER, and SCHALL, Circuit Judges.

SCHALL, Circuit Judge.

Dewey P. Collette, Jr., appeals the decision of the United States Court of Veterans Appeals which affirmed the denial by the Board of Veterans Appeals ("BVA") of his claim for service-related hearing damage. *Collette v. Brown*, No. 93–504, 1994 WL 540505 (Vet. App. Sept. 26, 1994). Because the decision of the BVA was based upon an incorrect interpretation of 38 U.S.C. § 1154(b) (1994), we vacate and remand.

## BACKGROUND

Collette served in the United States Army from December 1952 to October 1954. As a member of the 15th Infantry Regiment, he saw combat on the front line in Korea, where he was exposed to noise from bazookas (which he fired) and from artillery, mortar, and tank fire. Collette testified at his BVA

hearing that, during combat, incoming artillery rounds landed twenty-five or thirty feet away from him, and that he was knocked down several times by the concussion from the rounds.

Collette was honorably discharged from the Army on October 13, 1954. A "Report of Medical Examination" dated October 12, 1954, records a "15/15" result for a "wv" (whispered voice) hearing test. The spaces on the report form for recording the results of an "sv" (standard voice) hearing test and an audiometer hearing test were left blank.

Following his discharge, Collette held jobs that would not have damaged his hearing. In 1979, he was hospitalized for a non-hearing-related reason. A hearing test conducted at that time indicated that he had "moderate bilateral high frequency loss." Since 1980 Collette has been wearing a hearing aid in each ear.

In 1988, Collette sought disability payments from the Veterans Administration ("VA" or "agency") for service-connected hearing damage. After several denials of his claim, he appealed to the BVA.

At his BVA hearing, Collette explained that he began having difficulty hearing immediately after returning from Korea. In addition, Collette's cousin, Edmund C. Hill, testified that Collette had no problem understanding him in normal conversational tones before Collette left for Korea, but that upon Collette's return from Korea, it was necessary to "yell" at him to get his attention and that it was difficult to talk with him. At the hearing, Collette also submitted statements from several friends and relatives indicating that he suffered a noticeable hearing loss as a result of his service in Korea.

Collette argued that 38 U.S.C. § 1154(b), which requires that the VA accept "satisfactory lay or other evidence" as sufficient proof of service-connection of any injury alleged to have been incurred in combat, applied in his case. He claimed that the evidence he submitted—and which is outlined above—was "satisfactory" evidence and should be accepted as sufficient proof of service-connection. The BVA rejected Collette's arguments. It found that Collette's evidence that his hear-

ing was normal before he went to Korea and that he had hearing difficulties upon his return was inconsistent with the Report of Medical Examination. The BVA concluded that the Report of Medical Examination had to be given "far greater probative value" than Collette's proffered evidence. The BVA reasoned that if a hearing loss had been present and progressing since Collette's service, it should have been documented sooner after his discharge. The BVA determined: "The preponderance of the evidence is against the veteran's claim, and, accordingly, we are unable to render a decision favorable to the veteran."

Collette appealed to the Court of Veterans Appeals. In a single-judge opinion, the court summarily affirmed the BVA's denial of his claim. The court determined that Collette had "not demonstrated that the BVA committed either legal or factual error which would warrant reversal or remand." Collette's motion for review of the single-judge opinion was denied by a panel of three judges, with one judge dissenting. The panel stated that the BVA's opinion made it clear that the BVA had rejected, "as not credible," the lay evidence proffered by Collette. The panel further stated that the BVA had thus found that Collette's lay evidence was "an *unsatisfactory* predicate for application of § 1154(b), and that there was no need to look to its standard." In appealing the decision of the Court of Veterans Appeals, Collette asserts that the court erred in affirming the BVA's decision to deny his claim because the BVA misinterpreted 38 U.S.C. § 1154(b).

## DISCUSSION

### I.

As an initial matter, the VA argues that we do not have jurisdiction to hear Collette's appeal. The jurisdiction of this court, like the jurisdiction of all federal courts, is limited by statute. *Livingston v. Derwinski*, 959 F.2d 224, 225 (Fed.Cir.1992). The boundaries of our jurisdiction over appeals from the Court of Veterans Appeals are set out in 38 U.S.C. § 7292 (1994). *See Stillwell v. Brown*, 46 F.3d 1111, 1113 (Fed.Cir.1995).

Section 7292 empowers us to review a decision of the Court of Veterans Appeals "with respect to the validity of any statute or regulation ... or any interpretation thereof (other than a determination as to a factual matter) that was relied on by the Court [of Veterans Appeals] in making the decision." 38 U.S.C. § 7292(a). The statute further provides that "[e]xcept to the extent that an appeal under this chapter presents a constitutional issue, the Court of Appeals may not review (A) a challenge to a factual determination, or (B) a challenge to a law or regulation as applied to the facts of a particular case." *Id.* § 7292(d)(2).

■ The VA asserts that Collette's appeal challenges only factual determinations or the application of law to the facts of the case, and that it thus is beyond our jurisdiction. We disagree. Collette's contention for purposes of this appeal is that the BVA misinterpreted the requirements of § 1154(b), and that the Court of Veterans Appeals erred in affirming the BVA's decision that was based upon that misinterpretation. This is a straightforward question of statutory interpretation: What does § 1154(b) require? Therefore, we have jurisdiction over Collette's appeal under 38 U.S.C. § 7292(a).

II.

■ Collette asserts that the BVA misinterpreted 38 U.S.C. § 1154(b) by failing to accept the evidence he proffered as sufficient to prove service-connection. He also argues that the BVA's evaluation of his claim under a preponderance of the evidence standard was contrary to the requirements of § 1154(b). We review these questions of statutory interpretation *de novo. Jones v. Brown,* 41 F.3d 634, 637 (Fed.Cir.1994).

"Section 1154 makes it abundantly clear that special considerations attend the cases of combat veterans." *Jensen v. Brown,* 19 F.3d 1413, 1416 (Fed.Cir.1994). Section 1154(b) provides as follows:

In the case of any veteran who engaged in combat with the enemy in active service with a military, naval, or air organization of the United States during a period of war, campaign, or expedition, the Secretary shall accept as sufficient proof of service-connection of any disease or injury alleged to have been incurred in or aggravated by such service satisfactory lay or other evidence of service incurrence or aggravation of such injury or disease, if consistent with the circumstances, conditions, or hardships of such service, notwithstanding the fact that there is no official record of such incurrence or aggravation in such service, and, to that end, shall resolve every reasonable doubt in favor of the veteran. Service-connection of such injury or disease may be rebutted by clear and convincing evidence to the contrary. The reasons for granting or denying service-connection in each case shall be recorded in full.

38 U.S.C. § 1154(b).[1]

■ Section 1154(b) does not create a statutory presumption that a combat veteran's alleged disease or injury is service-connected. *See* H.R.Rep. No. 1157, 77th Cong., 1st Sess. 2 (1941) ("The language of the bill has been carefully selected to make clear that a statutory presumption in connection with determination of service-connection is not intended. The question as to whether any disability was or was not incurred in active military service is recognized as a question of fact."). The veteran must meet his evidentiary burden with respect to service connection. Section 1154(b) does, however, considerably lighten the burden of a veteran who seeks benefits for an allegedly service-connected disease or injury and who alleges that the disease or injury was incurred in, or aggravated by, combat service. *See Jensen,* 19 F.3d at 1417.

■ As both parties recognize, § 1154(b) sets forth a three-step, sequential analysis that must be undertaken when a combat

1. 38 C.F.R. § 3.304(d) (1995), implementing § 1154(b), provides:

Satisfactory lay or other evidence that an injury or disease was incurred or aggravated in combat will be accepted as sufficient proof of service connection if the evidence is consistent with the circumstances, conditions or hardships of such service even though there is no official record of such incurrence or aggravation.

veteran seeks benefits under the method of proof provided by the statute. As the first step, it must be determined whether the veteran has proffered "satisfactory lay or other evidence of service incurrence or aggravation of such injury or disease." 38 U.S.C. § 1154(b). As the second step, it must be determined whether the proffered evidence is "consistent with the circumstances, conditions, or hardships of such service." *Id.* The statute provides that if these two inquiries are met, the Secretary "shall accept" the veteran's evidence as "sufficient proof of service-connection," even if no official record of such incurrence exists. *Id.* Thus, if a veteran satisfies both of these inquiries mandated by the statute, a factual presumption arises that the alleged injury or disease is service-connected.[2]

■ This presumption is, however, rebuttable. The VA may rebut the presumption by presenting "clear and convincing evidence to the contrary." *Id.* Thus, as the third step in the analysis, it must be determined whether the government has met its burden of rebutting the presumption of service-connection by "clear and convincing evidence to the contrary." *Id.; see Jensen,* 19 F.3d at 1417 ("the government has the burden to rebut by clear and convincing proof").

The VA argues that the Court of Veterans Appeals found Collette's evidence "unsatisfactory" and that Collette thus failed to satisfy the first inquiry required under the statute. Consequently, the agency claims, Collette is not entitled to the benefit of a factual presumption of service-connection under § 1154(b).[3] "Satisfactory evidence" is not defined in title 38 of the United States Code. The agency urges the definition provided in *Black's Law Dictionary.* It defines "satisfactory evidence" as "[s]uch evidence as is sufficient to produce a belief that the thing is true; credible evidence; such evidence as, in respect to its amount or weight,

is adequate or sufficient to justify the court or jury in adopting the conclusion in support of which it is adduced." *Black's Law Dictionary* 1342 (6th ed. 1990).[4] Collette urges a similar definition. Notably, after its decision in this case, the Court of Veterans Appeals addressed the question of what "satisfactory evidence" in § 1154(b) means and concluded that it means "credible evidence." *Caluza v. Brown,* 7 Vet.App. 498, 510 (1995), *aff'd,* 78 F.3d 604 (Fed.Cir.1996) (table).

■ We agree with the parties' and the *Caluza* court's conclusions in this regard. Thus, we hold that if a veteran produces credible evidence that would allow a reasonable fact-finder to conclude that the alleged injury or disease was incurred in or aggravated by the veteran's combat service, the veteran has produced "satisfactory evidence" to satisfy the first requirement of § 1154(b).

In denying Collette's motion for review, the Court of Veterans Appeals stated that the BVA rejected Collette's lay evidence "as not credible." The court, however, misread the BVA's opinion. The BVA did not find Collette's lay evidence "not credible." Rather, in evaluating and rejecting Collette's claim under § 1154(b), the BVA weighed the probative value of Collette's lay evidence against the probative value of the contrary Report of Medical Examination at the time of discharge. Doing so, it found Collette's lay evidence less *probative* than the Report. The BVA made no finding as to whether Collette had presented credible evidence that would allow a reasonable fact-finder to conclude that the injury or disease was incurred in or aggravated by Collette's combat service. Nor did the BVA make any finding as to whether Collette had presented evidence establishing an injury that was "consistent with the circumstances, conditions, or hardships" of his service. Finally, the BVA made no finding as to whether the government had rebutted Collette's proof of service-connec-

---

**2.** Section 1154(b) makes the resolution of these inquiries very favorable to the veteran by providing that the Secretary "shall resolve every reasonable doubt in favor of the veteran." 38 U.S.C. § 1154(b).

**3.** The second inquiry, whether such evidence is "consistent with the circumstances, conditions,

or hardships of such service," is not at issue on appeal.

**4.** The edition of *Black's Law Dictionary* in use at the time this provision was enacted sets forth the same definition. *Black's Law Dictionary* 701 (3d ed.1933).

tion "by clear and convincing evidence to the contrary."

In short, as far as the first step of the § 1154(b) inquiry is concerned, the BVA interpreted the statute as calling for a weighing of the probative value of the evidence and a determination of whether a preponderance of the evidence favors the veteran. In this case, the BVA concluded that the preponderance of the evidence favored the VA. Having reached that conclusion, it did not proceed further to the next two steps.

■ We hold that the BVA's interpretation of § 1154(b) was incorrect as a matter of law. As explained above, § 1154(b) contemplates a sequential analysis in which the first step is an inquiry as to whether the veteran has presented "satisfactory" evidence of service-connected injury or disease. That inquiry requires a determination as to the credibility of the veteran's evidence standing alone, not a weighing of the veteran's evidence with contrary evidence. Nor does the second inquiry require the weighing of the veteran's evidence with contrary evidence. It is only in the third step (if the agency seeks to rebut the presumption of service connection) that evidence contrary to the veteran's claim of service connection, such as the Report of Medical Examination in this case, comes into play. That approach was not followed in this case.

### CONCLUSION

For the foregoing reasons, the decision of the Court of Veterans Appeals affirming the BVA's denial of Collette's claim is vacated. The case is remanded to the Court of Veterans Appeals, which is directed to (i) vacate the decision of the BVA and (ii) remand the case to the BVA for further proceedings consistent with this opinion.

### COSTS

Costs to Collette.

VACATED and REMANDED with INSTRUCTIONS.