﻿Citation Nr: AXXXXXXXX
Decision Date: 11/30/20 Archive Date: 11/30/20

DOCKET NO. 200624-95495
DATE: November 30, 2020

ORDER

Service connection for bilateral hearing loss is denied.

Service connection for tinnitus is denied.

FINDINGS OF FACT

1. A preponderance of the evidence is against the claim for service connection of bilateral hearing loss.

2. A preponderance of the evidence is against the claim for service connection of tinnitus.

CONCLUSIONS OF LAW

1. The criteria for establishing entitlement to service connection for bilateral hearing loss have not been met. 38 U.S.C. §§ 1110, 1154, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309, 3.385.

2. The criteria for entitlement to service connection for tinnitus have not been met. 38 U.S.C. §§ 1110, 1112; 38 C.F.R. §§ 3.303, 3.307, 3.309.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty in the US Army from September 1967 to June 1969. He received the Combat Infantryman’s Badge, among other decorations, for this service.

This matter comes before the Board of Veterans’ Appeals (the Board) under the Appeals Modernization Act (AMA). In the June 2020 VA Form 10182, Decision Review Request: Board Appeal, the Veteran elected the Direct Review docket after his June 2020 supplemental claim had been denied at the regional office (RO). Therefore, the Board may only consider the evidence of record at the time of the supplemental claim decision now on appeal. 38 C.F.R. § 20.301.

1. Service connection for bilateral hearing loss

The Veteran seeks entitlement to service connection for bilateral hearing loss due to noise exposure.

Under the relevant laws and regulations, service connection may be granted if the evidence demonstrates that a current disability resulted from an injury or disease incurred or aggravated in active military service. 38 U.S.C. §§ 1110, 1131; 38 C.F.R. § 3.303(a).

In general, service connection requires competent evidence showing: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004).

Diseases of the nervous system, including sensorineural hearing loss and tinnitus, are listed among the "chronic diseases" under 38 C.F.R. § 3.309(a); therefore, 38 C.F.R. § 3.303(b) applies. See Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013); Fountain v. McDonald, 27 Vet. App. 258, 271 (2015). Where the evidence shows a "chronic disease" in service or "continuity of symptoms" after service, the disease shall be presumed to have been incurred in service. For the showing of "chronic" disease in service, there is required a combination of manifestations sufficient to identify the disease entity, and sufficient observation to establish chronicity at the time. With chronic disease as such in service, subsequent manifestations of the same chronic disease at any later date, however remote, are service-connected, unless clearly attributable to intercurrent causes. If a condition noted during service is not shown to be chronic, then generally, a showing of "continuity of symptoms" after service is required for service connection. 38 C.F.R. § 3.303(b).

Additionally, where a Veteran served ninety days or more of active service, and certain chronic diseases become manifest to a degree of 10 percent or more within one year after the date of separation from such service, such disease shall be presumed to have been incurred in service, even though there is no evidence of such disease during the period of service. 38 U.S.C.A. §§ 1101, 1112, 1113; 38 C.F.R. §§ 3.307, 3.309(a). While the disease need not be diagnosed within the presumption period, it must be shown, by acceptable lay or medical evidence, that there were characteristic manifestations of the disease to the required degree during that time. Id.

In determining whether service connection is warranted for a disability, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the Veteran prevailing in either event, or whether a preponderance of the evidence is against the claim, in which case the claim is denied. 38 U.S.C. § 5107; Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of matter, the benefit of the doubt will be given to the Veteran. 38 U.S.C. § 5107 (b); 38 C.F.R. § 3.102.

The threshold for normal hearing is from 0 to 20 decibels, and higher threshold levels indicate some degree of hearing loss. Hensley v. Brown, 5 Vet. App. 155, 157 (1993). For the purposes of applying the laws administered by the VA, impaired hearing will be considered to be a disability when the auditory threshold in any of the frequencies 500, 1000, 2000, 3000, 4000 Hertz is 40 decibels or greater; or when the auditory thresholds for at least three of the frequencies 500, 1000, 2000, 3000, or 4000 Hertz are 26 decibels or greater; or when speech recognition scores using the Maryland CNC Test are less than 94 percent. 38 C.F.R. § 3.385.

Here, during the April 2020 VA examination, the Veteran was found to have hearing thresholds above 40 decibels in the 2000, 3000, and 4000 hertz frequencies of the right ear and the 3000 and 4000 hertz frequencies of the left ear. As such, he has impaired hearing for VA purposes. 38 C.F.R. § 3.385. Therefore, a current disability is established, satisfying the first element of Shedden. 

The Board also notes that the Veteran’s military occupational specialty (MOS) was an indirect fire infantryman, which had a high probability for hazardous noise exposure. His DD 214 further reflects service in combat for which he was awarded the Combat Infantryman’s Badge. The exposure to the types of noises described by the Veteran is consistent with the circumstances, conditions, or hardships of his service, and the evidence establishes the presence of an in-service injury, i.e., acoustic trauma. 38 U.S.C. § 1154 (b). This satisfies the second element of Shedden.

As noted above, the Board finds that the Veteran is a combat veteran and the provisions of 38 U.S.C.A. § 1154 (b) are applicable. However, the Board notes that Section 1154(b) does not create a statutory presumption that a combat veteran’s alleged disease or injury is service connected. Rather, a veteran seeking compensation must still show that there is a causal relationship between the present disability and the acoustic trauma in service. Collette v. Brown, 82 F.3d 389, 392-94 (Fed. Cir. 1996). In this case, the preponderance of the evidence is against finding a medical nexus between the current bilateral hearing loss of the Veteran and the high probability of hazardous noise exposure in service. The VA examiner noted in the April 2020 exam that the induction exam audiogram and the separation exam audiogram in the Veteran’s service treatment records (STRs) show no significant threshold shift. Additionally, the audiogram in the separation exam shows the Veteran’s hearing to be within normal limits and does not show any evidence of hearing loss. Finally, in annual medical exams conducted from 2008 to 2013, the Veteran did not report any hearing loss.

As part of the Veteran’s supplemental claim, he entered new and relevant evidence in the form of a June 2020 private medical examination. The private examiner opined that high frequency hearing loss is a result of combat noise levels during his military career. 

The Board finds the VA examination to be more probative here. The private examination noted that the examiner did not review the Veteran’s STRs, but only viewed the treatment records after the Veteran was separated from service. The VA examiner reviewed the entire claims folder and the Veteran’s STRs, which supported the VA examiner’s rationale. The VA examiner opined that because the entrance exam and separation exam showed the Veteran’s hearing to be within normal limits, there was no relationship between the Veteran’s current hearing loss and acoustic trauma in the military. The examiner specifically stated that it is less likely than not that the Veteran’s hearing loss was caused by or a result of military noise exposure. 38 C.F.R. § 4.6. The VA examiner offers a competent rationale for his finding, while the private examination has no rationale supporting its opinion.

The Board has also considered the provisions of 38 C.F.R. § 3.303(b). While the Veteran indicated in his claim that the onset was during service, to the extent to which he argues he had continuous decreased hearing, the record does not support such assertions. The weight of the evidence shows that there were no chronic symptoms of hearing loss during service or continuous symptoms of hearing loss since service. The 1969 service separation examination shows that the Veteran did not have any hearing loss for VA purposes upon separation from active service. While the Veteran reported having ear trouble and hearing loss in the separation report of medical history, subsequent post service records reflect he consistently denied hearing loss. For example, VA outpatient treatment records reflect he denied difficulty with hearing in September 2001, denied deafness in 2006, and denied hearing loss, pain, or ringing in April 2007, May 2008, May 2009, May 2010, May 2011, May 2012, and April 2013. The first mention of hearing loss after service was during a 2019 examination concerning his posttraumatic stress disorder. In other words, approximately 50 years passed between the Veteran's discharge from service and his report of hearing loss. This lengthy period of time without diagnosis or treatment weighs against the finding that the bilateral hearing loss has existed since service. See Maxson v. Gober, 230 F.3d 1330, 1333 (Fed. Cir. 2000).

Therefore, the Board gives more probative weight to the VA examination and the Veteran’s claim for bilateral hearing loss is denied.

2. Service connection for tinnitus

The Veteran seeks entitlement to service connection for tinnitus. He has asserted that this disability is the result of in-service acoustic trauma. Following a complete review of the claims file, the Board finds that the most probative evidence preponderates against entitlement to service connection for tinnitus.

For VA purposes, tinnitus has been specifically found to be a disorder with symptoms that can be identified through lay observation alone. See Charles v. Principi, 16 Vet. App. 370 (2002). If a veteran reports ringing in his or her ears, then a diagnosis of tinnitus is generally applied without further examination. As such, tinnitus is “subjective,” as its existence is generally determined by whether the Veteran claims to experience it. The Board has no reason to doubt the Veteran’s reports of current tinnitus and thereby concludes that he experiences tinnitus.

As noted above, the Board concedes that the Veteran’s MOS and combat service exposed him to hazardous noise exposure while in service. The Veteran has established the first and second elements of Shedden, by showing he suffers from a current disability, and that he suffered an in-service incurrence of hazardous noise exposure. However, the preponderance of the evidence is against a finding of a medical nexus is found between the Veteran’s current tinnitus and the in-service incurrence of hazardous noise exposure.

The April 2020 VA examiner reviewed the Veteran’s STRs and found no evidence of in-service incurrence of tinnitus. However, the VA examiner noted that there was no specific incident reported that could have led to the Veteran’s tinnitus. The VA examiner opined that tinnitus is less likely than not caused by or a result of military noise exposure.

When the Veteran filed his supplemental claim, he entered new and relevant evidence into the record to be reviewed. The Veteran entered a positive private medical examination. However, this private exam was also found to be lacking in probative weight. The private examiner did not review the Veteran’s STRs, did not address the Veteran’s conflicting lay statements, and there is no indication that the doctor has treated the patient for an extended period of time. Furthermore, the private opinion states that the Veteran’s diagnosed tinnitus was caused as a direct result of extensive noise exposure the Veteran experienced while on active duty but offers no convincing rationale with the statement. An audiogram was performed, but that alone cannot be offered as a rationale.

The Board concludes that the April 2020 VA examiner’s opinion is the most probative evidence of record on the issue of medical nexus. As noted above, the examiner reviewed the record, examined the Veteran and provided a rationale for the conclusions reached. In the absence of any other probative evidence linking the Veteran’s claimed tinnitus to his active duty service, the requirements of service connection have not been met.

The Board has also considered entitlement to service connection on a presumptive basis pursuant to 38 C.F.R. §§ 3.303 (b), 3.307, and 3.309(a), as tinnitus may be considered an organic disease of the nervous system. After a review of the evidence, the Board finds that the Veteran’s tinnitus was not chronic in service, was not continuous since service, and did not manifest to a compensable degree within one year following the Veteran’s separation from service. The Veteran’s service treatment records are negative for complaints of tinnitus and the Veteran denied ear trouble at service discharge.

The Board has considered the Veteran’s lay statements regarding the onset of his claimed tinnitus; however, such statements are not credible due to the varying degrees of inconsistency. See Caluza v Brown, 7 Vet. App. 498, 506 (1995). The Veteran made lay statements in the record that he was exposed to hazardous noise exposure in service. In the April 2020 VA examination, the Veteran specifically reported having experienced tinnitus since the 1970s. The Veteran’s STRs show no complaint, diagnosis or treatment for hearing loss or tinnitus. Specifically, the Veteran’s separation exam shows hearing was well within normal limits when he left service. According to the available medical records after separation, the Veteran did not report tinnitus or any ringing in the ears during any annual medical exam from 2006 to 2013. The records on file indicate that the Veteran did not complain of tinnitus until a disability benefits questionnaire (DBQ) that he filed in 2019. Due to the contradictory lay statements made here by the Veteran, the Board affords no significant probative value to the Veteran’s current statements that he has experienced tinnitus since the 1970s.

The Board is grateful for the Veteran’s honorable service. However, given the record before it, the Board finds that the evidence supporting this claim does not rise to the level of equipoise. See Skoczen v. Shinseki, 564 F.3d 1319, 1323-29 (Fed. Cir. 2009). Rather, the preponderance of the evidence is against finding that his current tinnitus or bilateral hearing loss is connected to service. 38 C.F.R. §§ 3.303, 3.310. For these reasons, the benefit-of-the doubt standard of proof does not apply, and service connection for bilateral hearing loss and tinnitus must be denied. See 38 U.S.C. § 5107 (b); Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

 

 

H. SEESEL

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board E.L. Aumiller, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.